*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYLER RAYMOND BOTHE,

        Defendant-Appellant.

UNPUBLISHED
March 21, 2024

No. 361725
Bay Circuit Court
LC No. 18-010819-FC

Before: M. J. KELLY, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant, Tyler Bothe, entered a conditional plea of no contest to second-degree murder, MCL 750.317, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of a loaded firearm in a vehicle, MCL 750.227c. Bothe appeals as on leave granted,[1] arguing that the trial court erroneously denied his motion to suppress incriminating statements he made during an interview with the police. Because there are no errors, we affirm.

## I. BASIC FACTS

On December 14, 2018, Justin Wood was shot dead on the side of a road by his pickup truck. One day later, Bothe admitted during a police interview that he had followed Wood's pickup truck and, after a verbal altercation, he shot Wood two times with a single-shot 12-guage shotgun that he had kept loaded in the backseat of his pickup. Bothe claimed that he did not intend to hit Wood with the first shot. He stated that Wood started screaming after he was shot the first time. Bothe reloaded his shotgun and shot him again. He said that he was acting in self-defense. The

---

[1] This Court initially denied Bothe's application for leave to appeal. See *People v Bothe*, unpublished order of the Court of Appeals, entered July 28, 2022 (Docket No. 361725). Thereafter, our Supreme Court remanded for consideration as on leave granted. See *People v Bothe*, 510 Mich 1117 (2022).

medical examiner, however, testified at the preliminary examination that Wood had been shot twice in the back.

Prior to trial, Bothe moved to suppress his statement to the police, arguing that police obtained these statements in violation of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), because he was in custody during the police interview but was never read his *Miranda* rights. The trial court denied his motion after determining that Bothe was not in custody for purposes of *Miranda*. Thereafter, Bothe entered a conditional guilty plea to second-degree murder, felony-firearm, and possession of a loaded firearm in a vehicle. This appeal by leave granted follows.

## II. MOTION TO SUPPRESS

### A. STANDARD OF REVIEW

Bothe argues that the trial court erred by denying his motion to suppress. "The ultimate question whether a person was 'in custody' for purposes of *Miranda* warnings is a mixed question of fact and law, which must be answered independently by the reviewing court after review de novo of the record." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018) (quotation marks and citations omitted). "This Court reviews for clear error the trial court's factual findings concerning the circumstances surrounding statements to the police." *Id*. "A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). "When the record contains a video recording of the events in question, however, this Court need not rely on the trial court's conclusions as to what the video contains." *People v Campbell*, 329 Mich App 185, 193; 942 NW2d 51 (2019) (quotation marks and citation omitted).

### B. ANALYSIS

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." US Const, Am V. "To protect this right, police officers must advise a defendant of certain rights before a custodial interrogation." *Campbell*, 329 Mich App at 202. "*Miranda* warnings are required when a person is in custody or otherwise deprived of freedom of action in any significant manner." *Id*. (quotation marks and citation omitted). "If the custodial interrogation is not preceded by an adequate warning, statements made during the custodial interrogation may not be introduced into evidence at the accused's criminal trial." *Id.* (quotation marks and citation omitted).

In this case, Bothe was not advised of his *Miranda* rights before his police interrogation. Thus, the issue is whether or not he was in custody during the interrogation. "Whether a defendant is in custody for purposes of *Miranda* at the time of an interrogation is determined by looking at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he or she was free to leave." *Id*. at 202 (quotation marks and citation omitted). "The relevant circumstances are as follows: (1) the location of the questioning, (2) the duration of the questioning, (3) statements made during the interview, (4) the presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of the questioning." *Barritt*, 325 Mich App at 562-563 (citations omitted). Because the reviewing court

must consider the totality of the circumstances, "no one circumstance is controlling." *Id*. at 563. Moreover, "[t]he determination of custody depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 568 (quotation marks and citation omitted).

The trial court found that the first factor—the location of the questioning—did not weigh in favor of a finding of custody. See *id*. at 562. Bothe was questioned at the police station. "A police station is a 'police-dominated atmosphere' as contemplated by *Miranda*." *Barritt*, 325 Mich App at 563 (quotation marks and citation omitted). However, the fact that an interview takes place at a police station does not, by itself, establish that a defendant is in custody. *Id.* at 565. For instance, a defendant has been found not to be in custody when he voluntarily drove himself to a police station for a prearranged interview and was left alone and unrestrained in an interview room. See *People v Mendez*, 225 Mich App 381, 383; 571 NW2d 528 (1997). In contrast, the location of an interview *may* weigh in favor of a finding of custody when the "questioning occurred in an office at the police station, in the constant presence of armed police officers, or that defendant was escorted into the room by armed police officers after being transported in a marked police car." *Barritt*, 325 Mich App at 567-568.

Here, the day after killing Wood, Bothe went to Wood's family's home. Upon learning that Bothe was at the home, the "fugitive team" went to the house. Two detectives, both of whom were wearing a suit and tie, and one fugitive officer entered the home. One of the detectives called Bothe's name and motioned for him to come and speak to them. When Bothe came over, the detective asked if he had any weapons on him. Bothe said that he did not and, according to the detective, he consented to being checked for weapons. The detective then asked if Bothe would be willing to step outside and talk to the police. According to the detective, Bothe agreed. Once they were outside, the detective asked Bothe if he would be willing to sit in an unmarked police vehicle so that they could speak privately. The detective testified that Bothe again agreed. After they were in the vehicle, the detective then asked if Bothe would be willing to speak at the police station. He indicated that Bothe again consented. The officer advised Bothe that they were "talking to friends and family and just trying to get further on the investigation." Bothe was not placed in handcuffs and he did not ask to drive his own vehicle to the police station. Further, no mention was made of his cellular phone. On the way to the station, Bothe asked "what this was about" and the detective indicated that he preferred to talk about the investigation once they got to the police station. The detective acknowledged that, before driving Bothe to the police station, he never told Bothe that he did not have to come to the police station or that he could leave if he wanted.

In contrast, Bothe testified that when the police entered the home they "told" him that he had to come with them and that they searched him, without permission, in the home. He stated that they told him that he "had to go with them to the station" and did not give him the option of remaining in the home. He described the officers as "armed" and stated that they had the house surrounded. He also testified that he asked if he could drive himself and if he could get his cellular telephone from his vehicle, but he was told no.

At the station, Bothe was questioned in a room located just off the lobby. The door to the room did not lock. The detectives advised him as soon as he entered the room that he was free to leave, was not under arrest, and that the door was merely closed for privacy. Additionally, the

detectives left him unattended in the room, so Bothe was not constantly in the presence of a police officer. The video of the interview shows Bothe checking his pockets for his cellular phone before telling the detectives that he left it in his truck.

The trial court credited the detective's testimony and found that Bothe had voluntarily travelled with the detective to the police station. The court's factual finding, which turned upon the credibility of the witnesses as it relates to a disputed factual question, is not clearly erroneous. Moreover, Bothe was in an unlocked interview room, was told that he was free to leave and was not under arrest, was told that the door was shut for privacy, and he was not constantly in the presence of armed police officers. The officers were, generally, very polite and appeared to sympathize with Bothe even when they were pointing out instances where he had contradicted himself and lied to them. On this record, the court's finding that the location of the questioning did not weigh in favor of a finding of custody is not clearly erroneous.

The trial court found that the second factor—the location of the questioning—did not weigh in favor of a finding of custody. The interview lasted approximately 80 minutes. We conclude that the duration of the interview, by itself, would not cause a reasonable person to believe that he or she was unable to leave or to terminate the interview. Thus, the trial court did not clearly err by finding that this factor weighed against a determination that Bothe was in custody.

The court found that the third factor weighed in favor of a finding that Bothe was not in custody. Under the third factor, the reviewing court must consider whether the police failed to tell the defendant that he or she is free to leave. *Barritt*, 325 Mich App at 570. Additionally, if the questioning becomes accusatory, this may also weigh in favor of determining that the interview was custodial. See *id*. at 573. Here, before any questioning occurred, the detectives advised Bothe that he was there voluntarily, was not under arrest, and that he was free to leave whenever he wanted to leave. Bothe stated that he understood and that he wanted to talk to the police. Subsequently, after questioning Bothe for approximately 30 minutes, the detectives left the room. When they returned, they again reminded him that he was free to leave and was not under arrest. Later, Bothe asked if he was free to leave. The officers did not tell him that he was not free to leave, nor did they state that he had to stay. Instead, they inquired whether he no longer wished to speak with them. Bothe stated, "No, I don't know guys." He made no motion to leave. He then continued to speak with the officers. In light of this record, the trial court did not clearly err by finding that the third factor weighed against a finding that Bothe was in custody.

Bothe argues that the detectives' statements during the interview were accusatory and aggressive, which created a coercive environment and would have made a reasonable person feel like he was unable to leave. After reviewing the video, however, we conclude that the detectives acted professionally, often speaking softly and slowly. Even when accusing Bothe of lying, the detectives appeared to be sympathetic and to empathize with Bothe's plight. The detectives also offered Bothe water at various points throughout the interview. They also facilitated his use of chewing tobacco. Having viewed the entirety of the video, we conclude that the statements made during questioning did not weigh in favor of custody.

With regard to the fourth factor, the lack of handcuffs generally weighs against a finding of custody. *Barritt*, 325 Mich App at 575. Here, there is no dispute that Bothe was never handcuffed prior to his arrest. In *Barritt*, 325 Mich App at 576, this Court held that the trial court

did not err by finding that this factor weighed in favor of custody, even when the defendant was never placed in handcuffs and there was no indication that officers brandished their weapons, because "riding to a police station in a marked vehicle, being walked in by armed detectives, and then being interviewed by armed police officers constituted physical restraints on defendant's freedom of movement, and a reasonable person would not feel at liberty to terminate the conversation and leave under such circumstances." In the present case, Bothe argues, even though he was never placed in handcuffs, that the facts in this case are so similar to *Barritt* that the trial court should have found that this factor weighed in favor of custody. However, unlike the defendant in *Barritt*, Bothe voluntarily accompanied the detective to the police station and rode with him in the front seat of his unmarked police car. Additionally, Bothe was left alone in the interview room for up to eight minutes on two separate occasions and explicitly told that he was free to leave and that he was not under arrest. After reviewing the record, we cannot conclude that the physical restraints used by police in *Barritt* were similar enough to the actions used by the police in this instance such that "a reasonable person would not feel at liberty to terminate the conversation and leave under such circumstances." *Id*. at 576. Therefore, the trial court did not err by finding that the lack of physical restraints weighed against a finding of custody.

Finally, the trial court did not clearly err by finding that the failure to release Bothe after the interview supported a finding of custody. When a "defendant [is] not released at the end of questioning, this factor weighs in favor of a finding of custody." *Id*. at 579.

When viewing the totality of the evidence, the trial court did not err when it found that Bothe was not in custody when he made incriminating statements to police. To summarize, Bothe voluntarily accompanied the detectives to the police station in an unmarked police vehicle. He was questioned in a room off the lobby with an unlocked door. He was told that the door was only closed for privacy. He was told on two occasions that he was free to leave and was not under arrest. He said he understood what he had been told. When he inquired further into whether he was free to leave, he was not told that he had to stay. Rather, the detectives asked if he no longer wanted to ask questions. He answered, "No, I don't know guys," and then continued to speak with the police without making any additional inquires or attempting to leave. The interview lasted for approximately 80 minutes. During that time, the officers were polite and respectful to Bothe. Even when they accused him of lying, they couched their accusations in terms of understanding and sympathy. They offered him water and facilitated his use of chewing tobacco. Bothe was not physically restrained. And, although he was in the presence of armed officers, the detectives were in plain clothes and they never brandished their weapons at him. Moreover, they were not constantly in his presence. Under these circumstances, a reasonable person in Bothe's position would have believed that he was free to terminate the interview.

The trial court did not err by denying Bothe's motion to suppress.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-5-